IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **SOUTHERN GEO-ENVIRONMENTAL CONSULTANTS, INC.,** *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CIVIL ACTION 09-0127-WS-N |
| **EDWARD S. HERZOG,** *et al.*, | ) ) ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on plaintiffs' Renewed Motion for Default Judgment (doc. 24). The Motion is ripe for disposition at this time.

**I.     Background.**

On or about March 12, 2009, plaintiffs, Southern GEO-Environmental Consultants, Inc. and Todd Lambert, filed a Complaint (doc. 1) in this District Court against defendants, Edward S. Herzog, Ancient Gates & Supplies, LLC, and Paramount Gates & Security Cameras, LLC. The genesis of the lawsuit lies in a simple commercial dispute. According to the well-pleaded factual allegations of the Complaint,[1] on or about March 5, 2008, plaintiffs ordered 1,000 feet of custom-made fencing from defendant Ancient for the purchase price of $57,490. (Doc. 1, ¶ 7.) To induce plaintiffs to purchase the fencing, defendant Herzog (Ancient's agent) promised that the fence would be delivered to plaintiffs in Baldwin County, Alabama in May 2008. (*Id.*)

---

[1]     All well-pleaded factual allegations in the Complaint are deemed admitted by virtue of defendants' default. *See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established") (citation omitted); *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact."); *Twist and Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp.2d 782, 783 (E.D. Tex. 2006) ("The effect of the entry of default is that it cuts off the defendants' right to appear in the case with respect to liability issues.").

Plaintiffs paid defendants a $50,000 downpayment on the transaction. (*Id.*) On May 5, 2008, Herzog notified plaintiffs that the "fencing looks beautiful," and that it would be shipped the following week. (*Id.*, ¶ 8.) In reliance on this representation, plaintiff forwarded the remaining balance of $7,490 to defendants. (*Id.*) Yet the fencing was never delivered. (*Id.*, ¶ 9.) Indeed, the factual allegations of the Complaint (which are now accepted as true) are that, notwithstanding Herzog's reassurances before and after contract formation, the fencing "was never built" and defendants "never intended to build" it. (*Id.*, ¶ 18.)

The parties engaged in a series of e-mail exchanges in the summer of 2008 as to the whereabouts of the fencing. In June 2008, Herzog (now purporting to be doing business as defendant Paramount, formerly known as Ancient) sent an e-mail to plaintiffs purporting to be "freaking out" as to the location of the fencing, and ascribing blame to the freight carrier for having lost the shipment. (Complaint, ¶ 9.) By late July 2008, Herzog told plaintiffs that he "had another company make the fencing," and that such other company had notified Herzog that the shipment was lost. (*Id.*, ¶ 10.) Herzog indicated that he would refund plaintiffs' money, although the refund would take approximately three days to process. (*Id.*) Despite repeated escalating requests and demands from plaintiffs, and repeated promises of performance or reimbursement by defendants, Herzog and the other defendants provided neither a refund nor the subject fencing to plaintiffs. (*Id.*, ¶¶ 10-12.)[2]

On the basis of these factual allegations, the Complaint asserted causes of action against Ancient, Paramount and Herzog for breach of contract, conversion, fraud, fraudulent concealment and wantonness. The *ad damnum* clause for the contract claim reflected that plaintiffs sought "compensatory damages in excess of the jurisdictional minimum," as well as interest, fees and costs; meanwhile, the tort claims included demands for all of those categories of relief, plus punitive damages.

---

[2] The last of Herzog's promises was made via e-mail dated August 13, 2008, at which time Herzog notified plaintiffs' then-counsel as follows: "I will send back Mr. Lambert the money that is due him. ... I will send a cashiers check to you directly. ... We did a wonderful job for Mr. Lambert on the gates and apologize it came to this. He put his trust in me and I let him down." (Lambert Aff., at Exh. 9.) Upon receiving confirmation as to the appropriate payee for the funds, Herzog wrote, "I will be in touch early next week." (*Id.*) Herzog's reassurances on this point once again proved hollow, as the funds were never received by plaintiffs.

Plaintiffs served process on all three defendants via private process server in Wilmington, North Carolina, on July 20, 2009. (Doc. 13.) Notwithstanding this fact, defendants never answered, defended or otherwise appeared herein. Accordingly, on August 31, 2009, the undersigned entered an Order (doc. 17) granting plaintiffs' motion for default as to all defendants for failure to plead or otherwise defend. On that same day, a Clerk's Entry of Default (doc. 18) was entered as to all three defendants pursuant to Rule 55(a), Fed.R.Civ.P. The August 31 Order (a copy of which was sent to defendants) specifically cautioned defendants that in the absence of immediate efforts to set aside the default, they would receive no further notice or opportunity to be heard in these proceedings. In the face of this unequivocal warning, defendants elected to remain silent; therefore, entry of default judgment against them is wholly appropriate. The only question is the amount of that judgment.

Plaintiffs have now filed a Renewed Motion for Default Judgment, with a supporting memorandum and evidentiary submission, including the affidavit of plaintiff Todd Lambert and various exhibits. Plaintiffs are requesting entry of default judgment against all three defendants (Herzog, Ancient, and Paramount), jointly and severally, in the amount of $57,490 in compensatory damages, plus prejudgment interest, costs, and an additional $25,000 in punitive damages as to the intentional tort claims.

## II.   Analysis.

As noted in the August 31 Order, the entry of a default against defendants does not relieve plaintiffs of their obligation to come forward with sufficient evidence to prove both the amount and character of their damages.[3] Although such evidence may be taken via evidentiary

---

[3]   "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007). Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (even where default judgment is warranted based on failure to defend, allegations in complaint with respect to damages are not deemed true, and district court must conduct inquiry in order to ascertain damages with reasonable certainty); *Patray v. Northwest Pub., Inc.*, 931 F. Supp. 865, 869-70 (S.D. Ga. 1996) (explaining that it is proper exercise of judicial power for court upon default to

hearing, no hearing is required if plaintiffs present sufficiently detailed documentation to enable the Court to fix damages.[4]  The Court finds that plaintiffs have satisfied this requirement by submitting written materials (in the form of affidavits and exhibits) in furtherance of their damages request; therefore, no hearing is necessary, and none has been requested.  As such, it is now appropriate to examine the specifics of plaintiffs' evidentiary showing for each contemplated item of damages.

### A. *Contract Damages.*

Plaintiffs peg their damages arising from defendants' breach of the fencing contract at $57,490.  Well-pleaded factual allegations in the Complaint establish that plaintiffs entered into a contract with defendant Ancient (the predecessor of defendant Paramount) to purchase custom-made fencing for the sum of $57,490.  Plaintiffs have also come forward with evidence establishing the fact, amount, and purpose of their payments to defendants pursuant to that agreement.  In particular, the record shows that plaintiffs sent $50,000 to defendants, of which Herzog acknowledged receipt in writing on May 5, 2008.  (Lambert Aff., ¶ 2 & Exh. 2.)  The record also confirms that plaintiffs remitted the remaining $7,490 to defendants in early May 2008.  (Lambert Aff., ¶ 3 & Exh. 2.)  Simply stated, the well-pleaded factual allegations in the

---

take evidence, fix amount which prevailing party should recover, and then give judgment).  A default judgment "does not give the plaintiff a blank check to recover from the defaulting defendant any losses it had ever suffered from whatever source."  *Jackson v. Correctional Corporation of America*, 564 F. Supp.2d 22, 27 (D.D.C. 2008) (citations omitted).

[4]  *See, e.g., S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005) (ordinarily the law "requires the district court to hold an evidentiary hearing" to fix damages, but no hearing is needed "when the district court already has a wealth of evidence ..., such that any additional evidence would be truly unnecessary to a fully informed determination of damages"); *also Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation."); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover).

Complaint and plaintiffs' evidentiary submission on motion for default judgment show that (1) plaintiffs entered into an agreement with Ancient to purchase fencing; (2) plaintiffs paid defendants the sum of $57,490 for said fencing; and (3) defendants neither provided the fencing nor reimbursed plaintiffs' money.

Under Alabama law, "[a]s a general rule, damages in a breach-of-contract action are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached." *Goolesby v. Koch Farms, LLC*, 955 So.2d 422, 427 (Ala. 2006) (citations and internal quotation marks omitted).[5] Plaintiffs paid Ancient/Paramount the sum of **$57,490.00** under their contract, but never received anything of value in return. That sum is properly recoverable in this action as compensatory damages because the reimbursement of those payments to plaintiffs will restore the status quo and return them to the position they would have held had Ancient/Paramount not breached the contract.[6]

### B.     Prejudgment Interest.

Plaintiffs also request prejudgment interest on the amounts that defendants owe them.

---

[5] *See also Systrends, Inc. v. Group 8760, LLC*, 959 So.2d 1052, 1075 (Ala. 2006) ("Damages for breach of contract should return the injured party to the position he would have been in had the contract been fully performed.") (citations and internal quotation marks omitted); *Garrett v. Sun Plaza Development Co.*, 580 So.2d 1317, 1320 (Ala. 1991) (damages in breach of contract context "are generally those that flow naturally from the breach").

[6] Although the contract award may be limited to defendants Ancient and Paramount (its successor), defendant Herzog not being a party to the agreement, this compensatory damages award is proper as to all three defendants under plaintiffs' tort claims. As to those claims, the appropriate measure of damages would encompass the full amount paid by plaintiffs for fencing that defendants never furnished, and never intended to furnish to plaintiffs. *See generally Griggs v. Finley*, 565 So.2d 154, 161 (Ala. 1990) ("We hold that the general measure of damages for fraud includes all damages within the contemplation of the parties or which are the necessary or natural and proximate consequences of the wrong."); *Edwards v. Vanzant*, 492 So.2d 990, 994 (Ala. 1986) ("The measure of damages for the conversion of personal property is the value of the property as of the date of the conversion ....") (citation omitted). With respect to the fraud claim, the property of which plaintiffs were defrauded by defendants is the $57,490 they paid as a direct result of false and misleading reassurances by Herzog (as agent of Ancient and Paramount) that the fencing would be built and delivered by May 2008. Similarly, concerning the conversion claim, the value of the property converted is $57,490, the sum that defendants misappropriated from plaintiffs. Therefore, the appropriate sum of compensatory damages is the same under both plaintiffs' contract and tort theories.

The Court agrees that such an award is appropriate in this case.  Indeed, it is well established under Alabama law that prejudgment interest may be available in the breach of contract context where, as here, damages were reasonably certain at the time of breach.  *See Goolesby*, 955 So.2d at 429 ("Prejudgment interest may be available in a breach-of-contract case, ... but only if damages were reasonably certain at the time of the breach.") (citations omitted).  The same is true in fraud or conversion cases where, as here, damages can be readily ascertained as a sum certain.  *See Lapeyrouse Grain Corp. v. Tallant*, 439 So.2d 105, 111-12 (Ala. 1983) (finding that prejudgment interest at statutory rate is properly awarded for fraud and conversion claims where damages were capable of computation with ease and certainty).

Thus, plaintiffs are entitled to prejudgment interest at the statutory rate of 6% per annum.  *See, e.g., Rhoden v. Miller*, 495 So.2d 54, 58 (Ala. 1986) ("Where no written contract controls the interest rate ..., the legal rate of pre-judgment interest is six percent per annum."); *Edwards v. Vanzant*, 492 So.2d 990, 994 (Ala. 1986) (recovery for conversion claim should include "interest at the rate of six per cent (6%) per annum from the date of the conversion").  The remaining variable is the time period during which prejudgment interest accumulates.  Alabama law provides that prejudgment interest on a contract for the performance of any act or duty accrues from the day the act should have been performed.  *See* Ala. Code § 8-8-8; *see also Miller and Co. v. McCown*, 531 So.2d 888, 889 (Ala. 1988) ("in contract cases, where an amount is certain or can be made certain as to damages at the time of breach, the amount may be increased by the addition of legal interest ***from that time*** until recovery") (emphasis added and citations omitted).  Similarly, on a conversion claim, prejudgment interest accrues "from the time of the conversion to the time of trial."  *Citizens Bank of Moulton v. Jones*, 671 So.2d 737, 741 (Ala.Civ.App. 1995).  Plaintiffs fail to address the question of accrual in their memorandum; however, the Court finds that the appropriate origination date for prejudgment interest calculations is August 13, 2008, the date on which Herzog last promised to return plaintiffs' money, never to follow through.  The breach of the parties' agreement and conversion of plaintiffs' funds took effect no later than that date.[7]  Computing simple prejudgment interest on plaintiffs' damages using this

---

[7]    It could reasonably be asserted that prior to August 13, 2008 there had been no breach and no conversion because the parties were actively communicating with each other and

accrual date yields a total prejudgment interest figure of **$4,243.23**, which will be added to plaintiffs' compensatory damages award.[8]

### C.     *Punitive Damages.*

Finally, plaintiffs ask the Court to impose an award of punitive damages because "[t]he evidence supports a finding of intentional misconduct under theories of conversion, misrepresentation and fraudulent concealment." (Doc. 25, at 6.)  Essentially, plaintiffs' position is that punitive damages should be imposed because defendants intentionally lied to induce them into entering an agreement to purchase a product that defendants never intended to deliver, then intentionally misled plaintiffs through an elaborate web of repeated false assurances about performance and reimbursement.  That pattern of deceit by defendants included a steady barrage of lies that the product had been constructed and shipped, that the carrier had lost the shipment, that defendants had arranged for an alternate vendor, that a full refund would be paid to plaintiffs within days, and so on, all to keep plaintiffs misinformed and at bay.  Plaintiffs correctly state that the record (namely, the well-pleaded facts in the Complaint and plaintiffs' supplemental evidentiary submission) supports an inference that the sole purpose of this ongoing cycle of deception was to string plaintiffs along, perpetuating the fraud for as long as possible, with defendants all the while holding ill-gotten cash belonging to plaintiffs.

It is hornbook law that "the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future." *Green Oil Co. v. Hornsby*, 539 So.2d 218, 222 (Ala. 1989). Under Alabama law, "[p]unitive damages must be supported by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or

---

attempting to negotiate a resolution of their dispute concerning the missing fencing.

[8]     Prejudgment interest is calculated using simple, rather than compound, computational techniques.  *See generally Burgess v. Williamson*, 506 F.2d 870, 875 (5th Cir. 1975) ("In the absence of a statute or an agreement, either express or implied, the law of Alabama is clear that the payee of a note has no right to charge and collect compound interest from the payor."); *Campbell v. Campbell*, 827 So.2d 111, 116 (Ala.Civ.App. 2002) (opining that Alabama law "does not permit the assessment of compound interest on judgments").  Plaintiffs have identified no authorities and made no arguments supporting any contrary approach.

...

malice with regard to the plaintiff." *Liberty Nat'l Life Ins. Co. v. Sanders*, 792 So.2d 1069, 1078 (Ala. 2000) (citation and internal quotation marks omitted). A finder of fact awarding punitive damages must, in fixing the amount, "take into consideration the character and degree of the wrong as shown by the evidence in the case, and the necessity of preventing similar wrongs." *Alabama Pattern Jury Instructions - Civil* (2nd ed.), § 11.03. Alabama courts have expressly authorized the award of punitive damages in certain circumstances in the fraud and conversion contexts. *See, e.g., Industrial Technologies, Inc. v. Jacobs Bank*, 872 So.2d 819, 826 (Ala. 2003) ("Punitive damages ... are justified when the evidence discloses the conversion to have been committed in known violation of law and of owner's rights, with circumstances of insult, or contumely, or malice.") (citations omitted); *Griggs v. Finley*, 565 So.2d 154, 162 (Ala. 1990) ("if the misrepresentation is shown to have been made with knowledge that it is false, then the law permits punitive damages by way of punishment"); *see also Lapeyrouse*, 439 So.2d at 110 (punitive damages may be awarded in fraud cases where "misrepresentation of a material fact [is] made with the knowledge that it was false" and in conversion cases where defendants converted property "in known violation of [plaintiffs]' rights and of the law").

Of course, the mere fact that defendants breached their contract to provide fencing to plaintiffs is not a valid ground for awarding punitive damages under Alabama law. But here we have much more than that. The clear and convincing evidence before the Court is that Herzog and the other defendants engaged in a deliberate campaign of lies, misdirection, and obfuscation in taking plaintiffs' money. Under the circumstances, the Court agrees with plaintiffs that an award of punitive damages is reasonable and appropriate in this case to punish the wrongdoers and to deter similar misconduct in the future. Specifically, the Court is of the opinion that the $25,000 award requested by plaintiffs is appropriate, in light of the character and degree of the wrong. Accordingly, upon consideration of all of the foregoing, the Court will impose an award of punitive damages against defendants in the sum of **$25,000.00**.

### III.     Conclusion.

For all of the foregoing reasons, plaintiffs' Renewed Motion for Default Judgment (doc. 24) is **granted**. A default judgment will be entered in favor of plaintiffs, Southern GEO-Environmental Consultants, Inc. and Todd Lambert, and against defendants, Edward S. Herzog, Ancient Gates & Supplies, LLC, and Paramount Gates & Security Cameras, LLC, jointly and

severally, in the total amount of **$86,733.23**, representing payments made by plaintiffs in connection with the fencing contract, prejudgment interest computed through today's date, and punitive damages to punish and deter defendants' intentional misconduct.

DONE and ORDERED this 5th day of November, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE
